# UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Case No. 06-71604-SCS |
| KATRINA ASKEW PHILLIPS, | ) | |
| | ) | Chapter 13 |
| *Debtor.* | ) | |
| | ) | |

## MEMORANDUM OPINION

This matter came for hearing on February 22, 2007, upon the Objections to Confirmation of the Chapter 13 plan of the Debtor, Katrina Askew Phillips ("Phillips"), by Triad Financial Corporation ("Triad") and George W. Neal, Chapter 13 Trustee ("Trustee"). The Court took the matter under advisement. This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157(b)(2) and 1334(b). Venue is proper pursuant to 28 U.S.C. § 1409(a). Upon consideration of the pleadings and the evidence presented by the parties at the hearing, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Phillips filed, by counsel, her voluntary petition under Chapter 13 of the Bankruptcy Code on October 28, 2006. Phillips filed her proposed Chapter 13 plan on November 20, 2006 ("Plan"). In her bankruptcy schedules, Phillips listed a 2001 Chrysler Voyager mini-van automobile ("Automobile") with accumulated mileage of approximately 93,300 miles. Phillips placed a value of $6,025.00 on the Automobile as of the date of the filing of her petition. Phillips scheduled the Automobile as subject to a security interest in favor of Triad with a claim in the amount of $11,305.00. Phillips' Plan proposed to pay to Triad $6,025.00

as the full amount of Triad's secured claim on the Automobile, representing Phillips' contention as to the replacement value of the Automobile, together with interest at the rate of nine percent (9%) per annum ("Triad Claim"). The Plan further provides that the amount of Triad's claim in excess of the replacement value of the Automobile would be treated as an unsecured claim and paid on a pro-rata basis along with any other unsecured claims. This proposed Plan treatment is commonly referred to as a "bifurcation" of a secured claim or as a "strip-down" of a lien, meaning the debtor proposes to pay as a secured claim in her Chapter 13 Plan only an amount equal to the replacement value of the collateral that secures the creditor's claim, thus "stripping down" the amount of the lien and "bifurcating" the creditor's formerly solitary secured claim into a secured claim in the amount of the collateral's value and an unsecured claim in the excess of any amount owed the creditor over the value of its collateral. This treatment, if permitted, is done so by the operation of Section 506 of the Bankruptcy Code, which determines the amount of a secured claim in a bankruptcy proceeding to be the value of the collateral securing the claim,[1] and Section 1325, which

---

[1] Section 506 of the Bankruptcy Code provides, in pertinent part, as follows:

(a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.
. . . .
(b) To the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the

provides the conditions under which a court may confirm a Chapter 13 plan.[2] *See In re Price*,

---

holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement . . . under which such claim arose.

11 USC §§ 506(a)(1), (b) (2006).

[2] Section 1325 of the Bankruptcy Code provides as follows:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that—

(I) the holder of such claim retain the lien securing such claim until the earlier of—

(aa) the payment of the underlying debt determined under nonbankruptcy law; or

(bb) discharge under section 1328; and

(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

(iii) if—

(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal

___ B.R. ___, 2007 WL 664534, at *3-4 (Bankr. E.D.N.C. Mar. 6, 2007).

This proposed Plan treatment provoked the filing of Objections to Confirmation of the

Plan by Triad and the Trustee.[3]  Triad objects to the Plan on two principal bases: (1) the

Automobile is subject to a purchase money security interest in its favor, which debt was

incurred within 910 days of the filing of the instant bankruptcy, and the Automobile was

---

> monthly amounts; and
>
> (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
>
> (C) the debtor surrenders the property securing such claim to such holder;
>
> (6) the debtor will be able to make all payments under the plan and to comply with the plan;
>
> (7) the action of the debtor in filing the petition was in good faith;
>
> (8) the debtor has paid all amounts that are required to be paid under a domestic support obligation and that first become payable after the date of the filing of the petition if the debtor is required by a judicial or administrative order, or by statute, to pay such domestic support obligation; and
>
> (9) the debtor has filed all applicable Federal, State, and local tax returns as required by section 1308.

11 U.S.C. § 1325(a) (2006).

[3]  USA Discounters also filed an Objection to Confirmation of Phillips' Plan asserting that its secured claim in the amount of $4,120.41 for merchandise purchased by Phillips approximately three months prior to her bankruptcy filing could not be reduced to the amount of the replacement value of the collateral of $1,300.00 as provided in the Plan.  USA Discounters provided no assertion of its legal basis for this objection, but presumably also asserts the provisions of the "hanging paragraph" of Section 1325 prohibit this treatment.  The Trustee has also objected to the Plan on the same basis.  The responses filed by Phillips do not address the objection of USA Discounters.  At the hearing on the various objections on February 22, 2007, counsel for the debtor and USA Discounters requested that the Court continue the objection of USA Discounters pending this Court's resolution of the Objections of Triad and the Trustee, which the Court so did.

acquired by the debtor for her personal use; therefore, the provisions of the "hanging paragraph" prohibit the treatment of the Triad Claim proposed in the Plan and require Phillips to pay the entire amount of the Triad Claim (the pay-off of which was $10,382.56 as of the petition date) as a secured claim together with interest; and (2) the Plan's proposal to pay interest on the amount of its secured claim at the rate of nine percent (9%) per annum does not reflect the contractual rate of interest of 18.5% and is in violation of the requirements of Section 1325 of the Bankruptcy Code as set forth in the decision of the United States Supreme Court in *Till v. SCS Credit Corp.* (*In re Till*), 541 U.S. 465 (2004). Objection to Confirmation of Chapter 13 Plan filed by Triad Financial Corporation, filed December 11, 2006, Docket Entry Number 16.

In a brief filed by Triad prior to the Court commencing hearing on the Objections, Triad took issue with Phillips' assertion, in an Affidavit filed with the Court on February 5, 2007, (which is set forth in detail below) that her use of the Automobile did not constitute "personal use of the debtor." Triad argues that Phillips' concession that she uses the Automobile to commute to and from work is an admission of personal use, and that Phillips' assertions that the use of the Automobile to transport her family should be found to constitute personal use as well. Triad further notes that the statute does not contain the requirement that the Automobile be used *solely* for the debtor's personal use. Triad states that while there are recent cases that stand for the proposition that other family or household uses eliminate the protections for a secured creditor in the statute, this interpretation nonetheless is not reasonable. First, Triad notes that this position would render the statute void in practice, as

any debtor could provide testimony wherein he has carried a passenger or anticipates carrying a passenger, thus negating the protections of the statute. Second, Triad points to case law which has opposed such a strict interpretation of the statute, favoring instead an interpretation in which "personal use" means that at least some portion of the use of the vehicle is for personal use of the debtor. Third, Triad notes the dearth of legislative history which could have otherwise provided insight into the intentions of Congress. Triad focuses on the fact that the overall intention of Congress when enacting BAPCPA was to provide more protection to secured creditors, and therefore, to strictly interpret "personal use" to the exclusion of household or family use would contravene such intent. Reply Memorandum to Debtor's Affidavit in Opposition to Triad's Objection to Proposed Chapter 13 Plan filed by Triad Financial Corporation, filed February 13, 2007, Docket Entry Number 28.

The Trustee's objections to the Plan of Phillips, in pertinent part, mirror those of Triad, in that the Trustee also believes the proposed treatment of the Triad Claim is in contravention of the "hanging paragraph" of Section 1325 of the Bankruptcy Code. The Trustee also asserts that the word "sole" should not be read into the statute with regard to the phrase "personal use" and that a debtor's household and family use should be included as the activities encompassed in this phrase. Regarding the proper rate of interest on the Triad Claim, the Trustee diverts from the assertions of Triad in his aversion that "the use of any interest rate may be inapplicable to claims covered by the 'hanging paragraph.'" Amended Objection to Confirmation of Chapter 13 Plan by Chapter 13 Trustee, filed January 22, 2007, Docket Entry

24, at page 2.[4]

   In his brief filed in support of his objection, the Trustee argues that a debtor such as

Phillips cannot bifurcate a secured claim which is subject to the "hanging paragraph" under

Section 1322(b)(2), which provides that a plan may "modify the rights of holders of secured

claims, other than a claim secured only by a security interest in real property that is the

debtor's principal residence, or of holders of unsecured claims . . . ."  Under the holding of

*In re Johnson*, 337 B.R. 269 (Bankr. M.D.N.C. 2006), the Trustee argues, a debtor cannot

bypass the requirements of the "hanging paragraph" and cram down a secured debt under

Section 1322, because to do so would be inconsistent with the statutory scheme, thus

rendering the "hanging paragraph" meaningless, and would also be in contradiction to the

albeit sparse legislative history of the "hanging paragraph."  Trustee's Brief in Support of

Amended Objection, filed February 20, 2007, Docket Entry 29, at pages 6-7 ("Trustee's Brief

in Support").

   The Trustee next addresses the Debtor's argument that, if Section 1322(b)(2) does not

apply, the language of the "hanging paragraph," which requires that the motor vehicle be

purchased for the "personal use of the debtor," be interpreted to mean that all other uses,

including family and household uses, are excluded.  The Trustee argues that the "hanging

paragraph" does not specifically use the term "exclusive," and the Court should therefore

---

   [4]  The Trustee originally filed an objection to the plan of Phillips on December 29, 2006.
The Trustee filed an Amended Objection to Confirmation of Phillip's Plan on January 22, 2007,
and it is the Amended Objection of the Trustee that is before the Court for decision.

7

interpret the phrase "personal use" to encompass both family and household use. *Id*. at 7. The Trustee points the Court to a passage in *In re Solis*, 356 B.R 398  (Bankr. S.D. Tex. 2006), which concludes that personal use encompasses family or household use, stating that such terms are not mutually exclusive.  The court in *Solis* also noted the absence of such qualifying words as "'solely,'" and "'exclusively,'" which led the court to conclude that the personal use requirement would be satisfied if "'the acquirer intended a debtor's personal use to be significant and material.'" Trustee's Brief in Support, at 8 (quoting *In re Solis*, 356 B.R. at 409).  The Trustee then argues that to interpret "personal use of the debtor" to exclude other uses would produce an absurd result, rendering the hanging paragraph meaningless. Specifically, he states that "[t]he only exception where a debtor could not cram down a claim pursuant to the 'hanging paragraph' would be a debtor who has no spouse, roommate or significant other; has no dependents; and who does not work." *Id*. at 9.

With regard to the issues surrounding the interest rate on Triad's Claim, while the Trustee declined to take any official position, he argued that the Court must first make a determination as to whether any interest could be assessed on claims falling under the guise of the "hanging paragraph" before the Court could determine what interest rate would be appropriate.  The Trustee, citing *In re Shaw*, noted that the majority view appears to be that the *Till* rate applies in such situations, reasoning that Congress was aware of the *Till* decision when it enacted BAPCPA, and their decision to not amend the applicable statutory language persuaded that court to conclude *Till* remained the proper standard under which to assess interest on secured claims under Section 1325(a)(5)(B)(ii).  *Id*. at 11 (citing *In re Shaw*, 341

8

B.R. 543, 547 (Bankr. M.D.N.C. 2006)).

However, the Trustee also pointed to *In re Wampler*, 345 B.R. 730 (Bankr. D. Kan. 2006), as illustrative of the minority view, which holds that the secured creditor is not entitled to interest because, with Section 506 removed from the equation, claims under the "hanging paragraph" are secured by a non-bankruptcy lien, allowed under Section 502, and must be treated outside the confines of Section 1325(a)(5). Trustee's Brief in Support, at 11-12 (citing *In re Wampler*, 345 B.R. at 740). The Trustee noted that "a literal reading of the 'hanging paragraph' when taken in conjunction with § 1325(a)(5), supports the holding in *Wampler*." *Id*. at 12. Given these opposing views among the courts, the Trustee urges the Court to first make a determination on whether interest may even be applied before proceeding to determine the appropriate rate of interest. Should the Court determine that an interest rate can be applied, he asserts that the current prime rate of 8.25% should apply, and if Triad asserts that a higher interest rate is appropriate, then the creditor should bear the burden of proof to establish such rate. *Id*.

In response to the Trustee's Amended Objection, Phillips filed, by counsel, a response, a brief, and a supplemental brief in support of her position, as well as her Affidavit regarding how she utilizes her Automobile. In support of her position, Phillips argues that the "hanging paragraph" does permit bifurcation of the Triad Claim by application of Section 506 of the Bankruptcy Code for several reasons. To begin, Phillips asserts that Section 506 only fails to apply where the motor vehicle in question has been acquired for the "personal use" of the debtor, and that the phrase "personal use" should be literally interpreted to mean the exclusive

9

use of the debtor, thereby excluding motor vehicles which are used for family or household

purposes. Debtor's Response to the Amended Objection to Confirmation of the Chapter 13

Plan by the Standing Trustee, filed January 31, 2007, Docket Entry 25, at page 2 ("Debtor's

Response"). In this regard, Phillips compares the BAPCPA amendment of the "hanging

paragraph," in which Congress used only the phrase "personal use," to the BAPCPA

amendment to Section 506, in which Congress inserted the phrase "personal, household, or

family purposes."[5]  Debtor's Brief in Support of Debtor's Response to the Amended

Objection to Confirmation of the Chapter 13 Plan by the Standing Trustee, filed February 21,

2007, Docket Entry 30, at page 6 ("Debtor's Brief"). While neither the phrase "personal use"

nor the phrase "personal, family, or household use" is defined in the Code, Phillips points to

the numerous sections of the Code that contain the latter phrase, including Sections 101(8);

365(d)(5); 507(a)(7); 522; and 722, to illustrate instances where Congress purposefully

utilized that phrase. *Id.* at 7.

Phillips also asserts that the plain meaning of the statute should apply unless such leads

to an absurd result. *Id.* at 4 (citing *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004)).

---

[5] Section 506(a)(2), added to the Bankruptcy Code by BAPCPA, states as follows:

If the debtor is an individual in a case under chapter 7 or 13, such value with respect
to personal property securing an allowed claim shall be determined based on the
replacement value of such property as of the date of the filing of the petition without
deduction for costs of sale or marketing. With respect to property acquired for
personal, family, or household purposes, replacement value shall mean the price a
retail merchant would charge for property of that kind considering the age and
condition of the property at the time value is determined.

11 U.S.C. § 506(a)(2) (2006).

10

To this extent, she argues that the Court should not read language into the statute that Congress did not expressly include, relying on the principle that Congress is assumed to act purposefully and intentionally when it includes certain language in a statute to the exclusion of other language.  Debtor's Response, at 2 (citing *Gozlon-Perezt v. United States*, 498 U.S. 395, 404 (1991)).  Phillips contends that the Court's focus should be on whether the Automobile was acquired for "personal use," or whether it was acquired for "family or household use."  *Id.* at 2-3.  Because Congress did not use the terms "family" or "household" in conjunction with the phrase "personal use" in the "hanging paragraph," Phillips posits that Congress intended only for "personal use" to be encompassed, and thus urges the Court to interpret the phrase "personal use" to mean the "sole" or "exclusive" personal use of the debtor so as to exclude that which is family or household usage as well as usage that is "primarily" personal use by a debtor.  Debtor's Brief, at 6-8.  Phillips specifically discards any notion that the analysis should focus on personal versus business use.  Debtor's Response, at 3.

In her supplemental brief to the Court filed subsequent to the hearing on the Objections, Phillips asserts that the Trustee's assertion and reliance upon the decision in *In re Solis*, 356 B.R. 398 (Bankr. S.D. Tex. 2006), is incorrect because the *Solis* court misapplied the holding of the Fourth Circuit in *Cypher Chiropractic Center v. Runski* (*In re Runski*), 102 F.3d 744 (4th Cir. 1996).  According to Phillips, *Runski* addressed "personal, family or household" use vis-à-vis "business" use for the purposes of determining redemption and found that a court must examine the purpose for which the property is used.  Supplement to Debtor's

11

Brief in Support of Debtor's Response to the Amended Objection to Confirmation of the Chapter 13 Plan by the Standing Trustee, filed February 27, 2007, at pages 1-2 ("Debtor's Supplemental Brief") (citing *In re Runski*, 102 F.3d at 747). Phillips thus relies on *Runski* to demonstrate her view that there are distinct differences in the statutory interpretation of the terms "personal," "family," and "household," as well as the use or lack of use of the term "primarily." *Id*. at 2.

Additionally, Phillips asserts in her response that public policy also favors her interpretation of "personal use." According to Phillips, if claims for motor vehicles acquired for family or household use are not permitted to be bifurcated, debtors would be encouraged to file their bankruptcy case as a Chapter 7 instead of a Chapter 13, the latter of which Congress sought to encourage by the passage of BAPCPA. Phillips' reasoning rests upon the language of Section 722 which permits a debtor to redeem personal property intended for personal, family, or household usage, arguing that if the Trustee's interpretation is adopted, debtors would be encouraged to redeem motor vehicle claims in a Chapter 7 case rather than modify and bifurcate the claim through a Chapter 13 plan. Debtor's Response, at 3. Second, Phillips argues that fewer motor vehicle loans would be excluded from the application of Section 506 if her interpretation of "personal use" was adopted, and even in scenarios where Section 506 would not apply, relief through a Chapter 13 case would still be encouraged over that of a Chapter 7 case. *Id*. at 4. Such inclusion of vehicles used for family or household purposes from the "hanging paragraph" would cause Chapter 13 debtors additional burdens and less opportunity to reorganize than under the Chapter 7 scheme according to Phillips. *Id*.

12

Phillips also argues that even if Section 506 is not applicable in the instant case, the Court can still allow the modification of the rights of a secured creditor pursuant to Section 1322(b)(2). *Id.* at 4-5; Debtor's Brief, at 8. According to Phillips, the plain language of the "hanging paragraph" does not require the underlying debt to be paid in full, but merely excludes from the application of Section 506 certain secured claims. Phillips distinguishes the "hanging paragraph" from subsection (a)(5)(B)(i)(I)(aa) of Section 1325 in which Congress used the phrase "payment of the underlying debt."[6] Debtor's Brief, at 9.

Phillips cites to Section 1325(a)(5)(B)(ii), the "cramdown" provision, which provides that a secured claim must be paid "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claims is not less than the allowed amount of such claim." *Id.* Because Section 1325(a)(5)(B)(ii), in conjunction with Section 1322(b)(2), and not Section 506, provides a debtor with the ability to "cram down" a debt so as to bifurcate a debtor between secured and unsecured portions, Phillips argues that she can modify the rights of Triad with respect to their claim despite the "hanging paragraph" language, and that disallowing such would result in an absurd conclusion. *Id.*

---

[6] Section 1325(a)(5)(B)(i)(I)(aa) provides in full:

(5) [W]ith respect to each allowed secured claim provided for by the plan—
(B)(i) the plan provides that—
(I)the holder of such claim retain the lien securing such claim until the earlier of—
(aa) the payment of the underlying debt determined under nonbankruptcy law . . .
.

11 U.S.C. § 1325(a)(5)(B)(i)(I)(aa) (2006).

13

Phillips points to the decision in *Till v. SCS Credit Corp.* (*In re Till*), 541 U.S. 465 (2004), as a source of guidance for valuing claims in the scenario where Section 506 does not apply. In particular, she points to the Supreme Court's statement that "[p]lans that invoke the cramdown power . . . must be calibrated to ensure that, over time, the creditor receives disbursements whose *total present value* equals or exceeds that of the allowed claim." *Id.* at 10 (quoting *In re Till*, 541 U.S. at 469) (emphasis added). According to Phillips, the BAPCPA amendments were silent as to how the present value of claims removed from the application of Section 506 should be determined. *Id.* at 11. As such, Phillips offers two potential methods by which this Court could determine the value of the Triad Claim. First, she suggests that the Court could look to *Till* and utilize a "formula approach," in which the Court would begin with a "low estimate," such as the wholesale liquidation value of the Automobile, and require Triad to present evidence if it sought to have a higher value placed upon the Automobile. Such method would, according to Phillips, "'place[] the evidentiary burden on the more knowledgeable party . . .'" *Id.* (quoting *In re Till*, 541 U.S. at 465). Alternatively, the Court could look to nonbankruptcy law, which would provide "the value expected if the creditor were to exercise their rights of foreclosure or repossession under nonbankruptcy law . . . ." Under Virginia law, according to Phillips, the creditor would be required to liquidate the asset at issue at auction. *Id.* Phillips argues that while these methods differ from those presented by Triad, the plain language of the Code; the intent of Congress; and the lack of any BAPCPA amendments encompassing *Till* and its progeny, support her position. *Id.* at 12. By employing her analysis, Phillips asserts that the Court would be

14

consistent in encouraging debtors to file their case under Chapter 13 "without dooming the

plan to failure by requiring debtors to pay ridiculously high oversecured claims (at the

expense of the unsecured creditors and the debtor) . . . while allowing the debtor to keep

collateral which is often crucial to the success of the plan." *Id.* Thus, the creditor would

receive at least the present value of the collateral plus a percentage of the unsecured portion

of the claim, simultaneously protecting the secured creditor and ensuring the success of the

Chapter 13 plan. *Id.*

As to the applicable interest rate on Triad's claim, Phillips asserts that BAPCPA did

not overrule or modify the ruling in *In re Till*. Rather, the analysis undertaken by the Court

in *Till* should apply to modify the interest rate on secured claims to which Section 506 cannot

be applied. Debtor's Response, at 4-5, and fn.4.

In her Affidavit filed prior to the hearing on the objections, Phillips asserted the

following under oath:

1.   That [she] bought a 2001 Chrysler Voyager (minivan) and it was
     purchased in part, for the following reasons:
     A.   To commute to and from work;
     B.   to drive [her] children to and from school and school related
          activities;
     C.   To do family tasks, including, but not limited to,
          a.   Shopping for groceries for the family,
          b.   Shopping for clothing and supplies for [her] children,
               and
          c.   To take family trips and vacations;
     D.   To drive [her] children to and from doctor and dentist
          appointments;
     E.   To drive [her] children to and from Church and Church related
          activities;
     F.   To drive [her] children to and from recreation activities,

15

> including, but not limited to:
>
> a.    Sports, including baseball, football and cheerleading, and
>
> b.    YMCA activities;
>
> G.    To drive to and from school conferences, PTA meetings and other school related activities regarding [her] children.
>
> 2.    That this list is illustrative of reason [*sic*] [she] bought a minivan for [her] family, instead of a smaller car just for [her].

Affidavit of Katrina A. Phillips, filed February 5, 2007, Docket Entry 27, at page 1.  At the hearing on the Objections, Phillips presented evidence as to her usage of the Automobile and confirmed the statements she made in her Affidavit.  In addition, Phillips testified she works for the Department of Homeland Security at the Norfolk International Airport and lives fifteen to twenty miles from her workplace.  Phillips further testified she is not required to have a motor vehicle as a condition of her employment but she is unable to commute to her workplace by public transportation because she is required to commence her workday at 4:00 a.m.

At the hearing, counsel for Triad argued that the proposed reading of "personal use" as suggested by Phillips is too narrow and would allow a debtor who uses a motor vehicle for any purpose other than her own, strictly personal, use, no matter how slight, to bypass the plain language and intent of the "hanging paragraph" and render Section 1325 a nullity.  For example, counsel for Triad asserted that Phillips' definition and interpretation of "personal use" was not practical and would mean that the purchaser never intended to have a passenger in her vehicle.  Counsel for Triad pointed the Court to the decision in *In re Vagi*, 351 B.R. 881, 885 (Bankr. N.D. Ohio 2006), where the court rejected a strict construction of the term

16

"personal use" as consistent with the overall goal of BAPCPA to reduce bankruptcy abuse.

Triad's counsel also cited the case of *In re Jackson*, 338 B.R. 923 (Bankr. M.D. Ga. 2006),

to the Court as illustrative of the split among the courts regarding personal use of a vehicle

by a debtor versus the use of the vehicle by a non-debtor spouse and argued that the instant

matter was distinguishable because Phillips has not asserted that the vehicle was purchased

for use by a non-debtor spouse.

Counsel for the Trustee reasserted the arguments set forth in the brief filed in support

of his objection and echoed the concerns of Triad.  He also stated that a debtor's "personal

use" should be extended to include their personal activities, including that of their family and

household, and to read the word "sole" into the phrase would essentially neutralize the

"hanging paragraph."  Instead, the Trustee asserts that a more appropriate reading of the

phrase "personal use" would encompass significant use by the debtor to accomplish family

and household tasks.

Counsel for Phillips argued that a debtor's "personal use" should be taken within the

context of the specific facts of the debtor's situation.  Counsel argued that the only instance

of the phrase "personal use," without the additional modifiers of "family" or "household," is

in the "hanging paragraph," and that Congress specifically used the phrase "personal, family,

or household use" in other sections of the Code, thus indicating that had they intended for

such use to be included as part of the requirement of the "hanging paragraph," they would

have chosen that specific phrase.  Counsel for Phillips contended that the plain language of

the statute should be accepted as just that and interpreted to mean only the debtor's sole

"personal use," and that to do otherwise would lead to an absurd result.

Finally, counsel for Phillips urged the Court not to read the "hanging paragraph" of Section 1325 as an anti-cramdown provision so as to deny the bifurcation of the Triad Claim, but instead as the method for the valuation of collateral, so as to give meaning to Sections 1322(b)(2) and 1325(b)(5)(2). To this extent, counsel argues that language from the United States Supreme Court decision in *Till v. SCS Credit Corp.* (*In re Till*), 541 U.S. 465 (2004), indicates that the present value of collateral must be determined as of the effective date of the plan, and that the "hanging paragraph," by its failure to modify either Sections 1322 or 1325, does not preclude Phillips from reducing the secured portion of the Triad Claim to the replacement value of the Automobile.

## CONCLUSIONS OF LAW

### I. The "Hanging Paragraph"

Prior to the amendment of Section 1325 by BAPCPA, debtors could utilize Section 506 of the Bankruptcy Code to "bifurcate" the claim of a creditor with a security interest in the debtor's motor vehicle, reducing the amount of the creditor's secured claim to the replacement value of the vehicle at the time of confirmation of the Chapter 13 plan and treating any remaining portion of the lender's claim as unsecured. *In re Johnson*, 337 B.R. 269, 270 (Bankr. M.D.N.C. 2006). The drafters of BAPCPA sought to limit the circumstances where Section 506 of the Bankruptcy Code could be utilized to "cram down" a secured creditor and bifurcate its claim into a secured and unsecured portion. BAPCPA amended existing Section 1325 of the Bankruptcy Code by the insertion of an unnumbered paragraph providing as

follows:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

11 U.S.C. § 1325 (2006).[7]  The meager legislative history which accompanied this passage

of BAPCPA provides little explanation as to the "hanging paragraph."[8]

---

[7]  This provision is called a "hanging paragraph" because it was appended to section 306 of BAPCPA without specifying a particular subsection of Section 1325(a) to which the amendment applied. *See In re Green*, Case No. 06-31615, ___B.R.___, 2007 WL 96677, at *1 fn.1 (Bankr. N.D.N.Y. Jan. 12, 2007) (citing Henry E. Hildebrand, III, *Getting Noticed: The New Notice Requirements of Section 342*, 13 AM. BANKR. INST. L. REV. 533, 538 n.27 (2005); Timothy D. Moratzka, *The Hanging Paragraph and Cramdown: 11 U.S.C. §§ 1325(a) and 506 after BAPCPA*, 25-4 AM. BANKR. INST. J., May 2006, at 18 (stating that "[i]n the uninformed rush by Congress to prevent bankruptcy abuse, § 1325(a) of the Bankruptcy Code was amended by BAPCPA to include a hanging paragraph at the end of § 1325(a)(9)")).  Some have referred to this section as the "starred paragraph" but "this usage . . . makes it more difficult to electronically search opinions that use this designation because electronic services such as Lexis and Westlaw use the asterisk . . . as a universal search character."  *In re Trejos*, 352 B.R. 249, 253 n.5 (Bankr. D. Nev. 2006).

[8]  The brief discussion of the "hanging paragraph" amendment to Section 1325 in the Report of the House of Representatives provided as follows:

> Protections for Secured Creditors.  S. 256's protections for secured creditors include a prohibition against bifurcating a secured debt incurred within the 910-day period preceding the filing of a bankruptcy case if the debt is secured by a purchase money security interest in a motor vehicle acquired for the debtor's personal use.  Where the collateral consists of any other type of property having value, S.256 prohibits bifurcation of specified secured debts if incurred during the one-year period preceding the filing of the bankruptcy case.  The bill clarifies current law to specify that the value of a claim secured by personal property is the replacement value of such property without deduction for the secured creditor's costs of sale or marketing.  In addition, the bill terminates the automatic stay with respect to personal property

The provisions of BAPCPA have drawn the ire of a number of reviewing courts since its enactment.[9]  One judge has succinctly stated as to the "hanging paragraph" that "[i]t is undisputed that the hanging paragraph is poorly drafted."  *In re Trejos*, 352 B.R. 249, 261 (Bankr. D. Nev. 2006).  This case raises three issues for resolution by the Court.  First, does the "hanging paragraph" prevent the modification of the Triad Claim?  Second, was the Automobile of Phillips acquired for her "personal use" such that the provisions of the "hanging paragraph" of Section 1325 prohibit the bifurcated treatment of the Triad Claim?  Finally, if the Automobile of Phillips is subject to the provisions of the "hanging paragraph" of Section 1325 and the Triad Claim must be treated as being fully secured, what interest rate, if any, must be paid on the Triad Claim in order for the Chapter 13 Plan of Phillips to be confirmable?

---

if the debtor does not timely reaffirm the underlying obligation or redeem the property.  Section 306(b) adds a new paragraph to section 1325(a) of the Bankruptcy Code specifying that Bankruptcy Code section 506 does not apply to a debt incurred within the two and one-half year period preceding the filing of the bankruptcy case if the debt is secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor within 910 days preceding the filing of the petition.  Where the collateral consists of any other type of property having value, section 306(b) provides that section 506 of the Bankruptcy Code does not apply if the debt was incurred during the one-year period preceding the filing of the bankruptcy case.

H.R. Rep. No. 109-31(I), Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 109th Cong. (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 103.

[9]  For a summary of the various critiques of the "hanging paragraph," see *In re Trejos*, 352 B.R. 249, 254, n.7 (Bankr. D. Nev. 2006).

II.  Principles of Statutory Interpretation in the Fourth Circuit

This Court recently had occasion to examine the principles of statutory interpretation espoused by the Fourth Circuit Court of Appeals in *In re Silvus*, 329 B.R. 193 (Bankr. E.D. Va. 2005).  As this Court proceeded in the *Silvus* case, our analysis here must necessarily begin with the statutory language of the "hanging paragraph."  It is a well-settled principle that "'unless there is some ambiguity in the language of a statute, a court's analysis must end with the statute's plain language.'" *Hillman v. Internal Revenue Serv.*, 263 F.3d 338, 342 (4th Cir. 2001) (citing *Caminetti v. United States*, 242 U.S. 470, 485 (1917); *United States v. Morison*, 844 F.2d 1057, 1064 (4th Cir. 1988)).  Two exceptions exist regarding the application of a statute's plain language.  In interpreting Section 365 of the Bankruptcy Code, the Fourth Circuit Court of Appeals has stated:

> [A] court is obliged to apply the Plain Meaning Rule unless the party contending otherwise can *demonstrate* that the result would be contrary to that intended by Congress.  Requiring a demonstration that the plain meaning of a statute is at odds with the intentions of its drafters is a more stringent mandate than requiring a showing that the statute's literal application is unreasonable in light of bankruptcy policy.

*RCI Tech. Corp. v. Sunterra Corp.* (*In re Sunterra*), 361 F.3d 257, 269 (4th Cir. 2004) (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989)).  The Fourth Circuit drew on the earlier ruling of the United States Supreme Court in the *Ron Pair Enterprises* case, in which the Court held that "[t]he plain meaning of legislation should be conclusive, except in 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *Ron Pair Enters.*, 489 U.S. at 242.

21

The second exception to the Plain Meaning Rule is triggered "'when literal application of the statutory language at issue results in an outcome that can truly be characterized as absurd, i.e., that is so gross as to shock the general moral or common sense.'" *In re Sunterra*, 361 F.3d at 265 (quoting *Hillman*, 263 F.3d at 342). As to both of these exceptions, the instances in which either should apply should be "'exceptionally rare.'" *Id*. (quoting *Hillman*, 263 F.3d at 342).

In *Sunterra*, the Fourth Circuit considered, *inter alia*, the proper interpretation of Section 365 of the Bankruptcy Code and whether the word "or" should be construed in the disjunctive or as the conjunctive "and." *Id*. at 262 and fn.8. The Court found that, contrary to Sunterra's argument, reading Section 365(c) literally would not produce an absurd result as it would not render other provisions of Section 365 inoperative, nor would it create an irreconcilable conflict with itself or neighboring statutes. *Id*. at 267. The Court also found that a literal reading of the statute would be consistent with the general bankruptcy policy constructed by Congress. In making the latter finding, the Court explained that "if it is plausible that Congress intended the result compelled by the Plain Meaning Rule, we must reject an assertion that such an application is absurd." *Id.* at 268 (citing *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 304 (4th Cir. 2000), *aff'd sub nom. Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002)).

III. Does the "Hanging Paragraph" Prevent the Bifurcation of the Triad Claim?

Phillips argues that the "hanging paragraph," by its negation of the effect of Section 506 of the Bankruptcy Code, is insufficient to prevent bifurcation of the Triad Claim. Phillips

reminds the Court of Justice Stevens' reference in the plurality opinion in *Till v. SCS Credit Corp.* (*In re Till*), 541 U.S. 465, 473 (2004), to Section 1325(a)(5)(b) as the "cramdown provision" and urges the Court to conclude the "hanging paragraph," by its failure to modify either Sections 1322[10] or 1325,[11] therefore does not preclude Phillips from reducing the secured portion of the Triad Claim to the replacement value of the Automobile.

Some commentators on the "hanging paragraph" have suggested the absence of a direct amendment of Section 506 of the Bankruptcy Code is significant. *See* Jean Braucher, *Rash and Ride-Through Redux: The Terms for Holding on to Cars, Homes and Other Collateral Under the 2005 Act*, 13 AM. BANKR. INST. L. REV. 457, 471-72 (2005) ("Perhaps the intent was to require full payment of these debts, even when dramatically undersecured because of the depreciation that occurs right after purchase, when the goods become used, but perhaps not. A large problem with the argument that the intention was to dictate full debt repayment for certain recently acquired collateral is that section 1325(a) nowhere says that."). This argument was adopted by a minority of reviewing courts. *See, e.g.*, *In re Carver*, 338 B.R. 521, 524-25 (Bankr. S.D. Ga. 2006). As this Court recently concluded in *In re Ellegood*, ___

---

[10]  Section 1322 of the Bankruptcy Code provides, in pertinent part, as follows:

(b) Subject to subsections (a) and (c) of this section, the plan may—
(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims . . . .

11 U.S.C. § 1322(b)(2) (2006).

[11]  *See* footnote 2 for the text of Section 1325 of the Bankruptcy Code.

23

B.R. ___, Case No. 06-50579-SCS, 2007 WL 576048, at *3 (Bankr. E.D. Va. Feb. 22, 2007),

"'[t]he majority holds that a claim of the type described in the hanging paragraph . . . is

deemed secured in the full amount of the claim.  Courts reaching this conclusion reason that

nonbankruptcy law determines whether a claim is secured while bankruptcy law determines

the value of a secured claim.'"  *Id.* at *3 (quoting *In re Green*, 348 B.R. 601, 603 (Bankr.

M.D. Ga. 2006)).  Judge Markell has well-summarized this conclusion:

> [I]t is evident that Section 506 cannot be read as the exclusive repository of
> secured status in chapter 13; as noted in *Dewsnup*, Section 506(a) is "not a
> definitional provision."  This result conforms to the structure and workings of
> chapter 13 and of the Bankruptcy Code itself.  If the contractual part of a claim
> is modified and then satisfied, as compliance with Section 1325(a)(5)(B)
> assures, then the lien is extinguished; in short, no debt, no lien.  Debtors should
> desire this result, since the goal of a chapter 13 plan is to deal with their debts
> permanently, and not just during the pendency of the case.  And reading the
> hanging paragraph to simply take away the bifurcation that is unique to
> bankruptcy, and leave creditors with liens on estate property to still be "secured
> claims," simply affects the amount that is to be paid to secured creditors.
>
> The consequence of this analysis is that there may be allowed "secured claims"
> in chapter 13 without resort to Section 506.  As a result, in cases in which the
> hanging paragraph applies, and the creditor holds an allowed claim secured by
> a lien, the claim qualifies as an "allowed secured claim provided for by the
> plan" as anticipated by Section 1325(a)(5).

*In re Trejos*, 352 B.R. 249, 263-64 (Bankr. D. Nev. 2006) (citing *Dewsnup v. Timm*, 502 U.S.

410, 415 (1992); *In re Brooks*, 344 B.R. 417, 420-21 (Bankr. E.D.N.C. 2006); David Gray

Carlson, *Cars and Homes in Chapter 13 After the 2005 Amendments to the Bankruptcy Code*,

14 AM. BANKR. INST. L. REV. 301 (2006) ("*Dewsnup* permits unmooring the definition of

'allowed secured claim' from § 506(a)(1).")).

24

The lack of reference by the "hanging paragraph" to Section 1322 of the Bankruptcy Code similarly does not limit the effect of this section. The interpretation of the "hanging paragraph" urged by the Trustee and Triad "does not make the language of Section 1322(b)(2) meaningless; a plan may still modify the term of the loan and the interest rate, even if bifurcation is not allowed." *In re Johnson*, 337 B.R. 269, 273 (Bankr. M.D.N.C. 2006). *See also In re Trejos,* 352 B.R. at 263 n.25 ("The hanging paragraph does not alter Section 1322(b)(2) which allows debtors to modify the claim secured by estate property—debtors may still stretch out maturity dates, alter payment schedules and propose modified interest rates.").

This Court cannot conclude that either of the enumerated exceptions to the Plain Meaning Rule apply with regard to this result, as it neither leads to a conflict between or among neighboring or related statutes, nor produces an absurd result. Instead, the result appears consistent with the statutory scheme of the Bankruptcy Code to ensure that claims that are subject to the "hanging paragraph" will be paid as secured claims, in the full amount of the claim. *See In re Ellegood*, 2007 WL 576048, at *3. Accordingly, Phillips' argument that the "hanging paragraph," by its failure to modify Sections 1322 and 1325 of the Bankruptcy Code, thereby permits the "bifurcation" attempted here is without merit. Likewise, Phillips' argument that collateral subject to the "hanging paragraph" should be valued using one of the methods she suggest must also be rejected for these same reasons. However, it remains for the Court to consider whether the acquisition of the Automobile by Phillips was for "personal use."

IV.  "Acquired for Personal Use of the Debtor"

Here it is not contested that Triad holds a purchase money security interest in a motor vehicle where the indebtedness was incurred by the debtor within 910 days of her bankruptcy filing.  However, Phillips contends the Automobile in question in the instant matter was not acquired for her personal use.  Accordingly, the Court must attempt to interpret the provision of Section 1325 of the Bankruptcy Code which prohibits bifurcation of a creditor's claim if the claim is secured by a purchase money security interest on a motor vehicle "acquired for the personal use of the debtor."

Neither the "hanging paragraph" nor any other provision of BAPCPA define the term "personal use."  *In re Johnson*, 350 B.R. 712, 714-15 (Bankr. W.D. La. 2006).  However, the term "personal, family, or household use" appears in a number of instances in the Bankruptcy Code both prior to and after the BAPCPA amendments.  *In re Press*, No. 06-10978, 2006 WL 2734335, at *2 (Bankr. S.D. Fla. July 26, 2006) (slip opinion).[12]  The debtor in the instant

---

[12]  Judge Olson has noted the multiple sections of the Bankruptcy Code in which the phrase "personal, family, or household use" appears:

> The term "personal use" is nowhere defined in the Bankruptcy Code, although the term "personal, family or household use" appears repeatedly throughout the Code. When Congress wants to include family or household use within the scope of the Bankruptcy Code, it knows how to do so, and, indeed, did so in BAPCPA amendments to § 506(a)(2). For example, § 101(8) provides that "[t]he term 'consumer debt' means debt incurred by an individual primarily for a personal, family, or household purpose," 11 U.S.C. § 101(8).  The phrase appears in § 365(d)(5) regarding performance of obligations under an unexpired lease; in § 506(a)(2), inserted by BAPCPA, regarding valuation of certain property; in § 507(a)(7) regarding priority claims for deposits for goods and services; and in various places in § 522 regarding exempt property.

matter urges that the omission of the additional terms "family or household" was intentional on the part of the drafters of BAPCPA and has the effect of excluding from the anti-bifurcation provisions of the "hanging paragraph" motor vehicles acquired for "family or household" usage. A number of decisions have interpreted this provision with varying results, seemingly dependent upon whether a court looks to prior judicial definition of the term "personal, family, or household use" as guiding the current endeavor or views the absence of these additional modifiers of "family" and "household" as dispositive of the determination of the meaning of this requirement.

The most often cited decision interpreting the term "personal, family or household use" is a decision of the Fourth Circuit Court of Appeals.  In *Cypher Chiropractic Center v. Runski* (*In re Runski*), 102 F.3d 744 (4th Cir. 1996), the Court of Appeals considered a decision of the bankruptcy court allowing the debtor, Lorraine B. Runski, to redeem certain personal property pursuant to 11 U.S.C. § 722 (1993).  Before the bankruptcy court, Runski agreed that certain medical and office equipment, which was sold by the creditor, Cypher Chiropractic Center, to Runski, was not "family" or "household" goods, but argued that because she owned the equipment in her own name and that she, herself, used it in the course of her business, the equipment was personal to her.  *Id.* at 746-47.  The creditor argued that "the relevant consideration in determining whether property is subject to redemption under § 722 is the purpose for which the property is used, not the manner in which it is titled" and "because the

---

*In re Press*, 2006 WL 2734335, at*2.

property was used for the purpose of conducting a business, it is not 'intended primarily for personal . . . use' within the meaning of § 722." *Id.* at 746.

The Fourth Circuit Court of Appeals found the purpose for which the debt was incurred was determinative in concluding whether debt is for "personal, family, or household use":

> In determining whether debt is for "personal, family, or household purposes" under § 101(8), courts look to the purpose for which the debt was incurred. And, courts have concluded uniformly that debt incurred for a business venture or with a profit motive does not fall into the category of debt incurred for "personal, family, or household purposes." In short, debt incurred for a business venture is not "consumer debt" because it is not "debt incurred by an individual primarily for a personal, family, or household purpose."

*Id.* at 747 (citing *Zolg v. Kelly* (*In re Kelly*), 841 F.2d 908, 913 (9th Cir.1988) ("Debt incurred for business ventures or other profit-seeking activities is plainly not consumer debt . . . ."); *In re Bell*, 65 B.R. 575, 577 (Bankr. E.D. Mich. 1986)).

Illustrative of the decisions utilizing the reasoning of *Runski* in interpreting the requirement of acquisition of a vehicle for "personal use" as set forth in the "hanging paragraph" is *In re Lowder*, Case No. 05-44802, 2006 WL 1794737 (Bankr. D. Kan. June 28, 2006) (slip opinion). There the debtor contended that because she used her car to drive to and from work, it was not acquired for the personal use of the debtor and, therefore the anti-bifurcation language of the "hanging paragraph" of Section 1325 did not apply. In rejecting this notion, the court adopted the interpretation of *Runski*:

> The [Fourth Circuit Court of Appeals], relying on cases interpreting whether a debt is a consumer debt under § 101(8), held that "property used for business purposes or with a profit motive is not 'property intended primarily for personal use' within the meaning of § 722." The Court finds the approach taken by the *Runski* court persuasive in deciding how this Court should interpret the term

28

"personal use" in § 1325(a). When a debtor can establish that a vehicle has been acquired for business purposes, the hanging paragraph in § 1325(a) will not apply. That debtor will be able to bifurcate the claim into a secured and unsecured portion and pay only the value of the vehicle, with interest. Conversely, when the evidence shows that a vehicle was acquired for non-business, or the "personal," use of the debtor, bifurcation is impermissible. The stipulated evidence shows that Debtor did not acquire the vehicle for business purposes. Merely acquiring a vehicle for her own use, with one of the uses contemplated being to drive to and from work, is not for "business" purposes; it is for personal use.

*Id.* at *3-4. *Accord*, *In re Wilson*, Case No. 06-40637, 2006 WL 3512921, *2 (Bankr. D. Kan. Dec. 5, 2006) (slip opinion); *In re Solis*, 356 B.R. 398, 409 (Bankr. S.D. Tex. 2006) ("The Court agrees with the almost universal conclusion that 'personal' implies 'non-business.'"); *In re Bolze*, Case No. 06-40036, 2006 Bankr. LEXIS 2027, at *11 (Bankr. D. Kan. Aug. 31, 2006).

Some courts that have adopted the distinction of business versus personal use as the fundamental decisional criteria for application of the "hanging paragraph" have also added a further refinement, holding that the concept of "business use" includes the utilization of the vehicle by a debtor in the generation of income. *See, e.g.*, *In re Hill*, 352 B.R. 69,73 (Bankr. W.D. La. 2006). The difficulty in application of this wrinkle is well illustrated by the *Hill* decision, where a debtor who was not required by her employer to have a vehicle during the course of the day at her workplace but utilized the vehicle for commuting to and from work was found not to have acquired the vehicle for her personal use. *Id.* at 73-74. In contrast, other courts have found the debtor's use of a vehicle for commuting to and from their workplace was a personal use. *In re Wilson*, 2006 WL 3512921, at *3; *In re Solis*, 356 B.R. at 406-07; *In re*

29

*Lowder*, 2006 WL 1794737, at *4.[13]

Other decisions have found significance in the omission by Congress of the previously

oft-used tandem of "family or household." In *In re Jackson*, 338 B.R. 923 (Bankr. M.D. Ga.

2006), the court considered whether a vehicle purchased by a debtor as a replacement vehicle

for his non-debtor spouse was acquired for personal use as required for application of the

"hanging paragraph." The objecting creditor contended that the term "personal use" may

include family or household use, a construction rejected by the court:

> In interpreting the hanging paragraph, the Court begins with the principle that it
> must enforce the plain language of the statute unless doing so leads to an absurd
> result. Furthermore, "'[i]t is generally presumed that Congress acts intentionally
> and purposefully when it includes particular language in one section of a statute
> but omits it in another.'"
>
> In this case, the statute applies to a motor vehicle "acquired for the personal use
> of the debtor." [The creditor] does not argue that this language is in any way
> vague or ambiguous. In fact, it is the one portion of the hanging paragraph of
> unquestionable clarity in the Court's view. [The creditor] does argue, however,
> that the "personal use of the debtor" may include family or household use.
> However, when Congress wants to include family or household use within the
> scope of a statute, it knows how to do so. For example, § 101(8) provides, "The
> term 'consumer debt' means debt incurred by an individual primarily for a
> personal, family, or household purpose." The phrase also arises in § 365(d)(5)

---

[13] Judge Steen well describes the rationale for concluding that the use of a vehicle to
commute to and from work is usually regarded as a personal use:

> The Court concludes that "personal use" includes transportation to and from work
> in almost all circumstances since there is almost always an alternative such as
> walking, bicycling, public transportation, carpooling, obtaining housing closer to the
> workplace, etc. In circumstances in which there is an alternative, the decision to use
> an automobile is a personal use: to make the trip faster, more pleasant, and more
> convenient. But if there is truly no alternative, the Court would not conclude that the
> use of a vehicle to go to and from work was "personal use" of the vehicle.

*In re Solis*, 356 B.R. at 410.

(regarding performance of obligations under an unexpired lease); § 506(a)(2) (regarding valuation of certain property); § 507(a)(7) (regarding deposits for the acquisition of certain property); and several subsections of § 522 (regarding exempt property). Consequently, the omission of "family and household" use from the hanging paragraph demonstrates that Congress intended "personal use" standing alone to have a different meaning.

"Personal" is defined as "[o]f or relating to a particular person; private." In this case, the vehicle must have been acquired for the use of a particular person—Debtor—for the hanging paragraph to apply. [The creditor] has conceded that the [vehicle at issue] was purchased to replace Debtor's wife's previous car, that she has at all times been the primary driver of the [vehicle at issue] and that Debtor has primary use of a different vehicle. Because the [vehicle at issue] was not acquired for Debtor's personal use, the hanging paragraph does not apply to [the creditor]'s claim.

*Id.* at 925-26 (citations and footnotes omitted). *Accord*, *Sovereign Bank, F.S.B. v. Finnegan* (*In re Finnegan*), ___ B.R. ___ Case No. 1:06BJ00198, 2006 WL 3883847, *2 (Bankr. M.D. Pa. Nov. 30, 2006) (citing *In re Jackson*, 338 B.R. at 925) ("Personal use of the debtor is distinct from personal use of a debtor's household or his dependents."); *In re Press*, No. 06-10978, 2006 WL 2734335, at *2 (Bankr. S.D. Fla. July 26, 2006).[14]   Other decisions have adopted the

---

[14] Judge Olson's reasoning in *Press* closely mirrors the rationale espoused in *Jackson*:

The term "personal use" is nowhere defined in the Bankruptcy Code, although the term "personal, family or household use" appears repeatedly throughout the Code. When Congress wants to include family or household use within the scope of the Bankruptcy Code, it knows how to do so, and, indeed, did so in BAPCPA amendments to § 506(a)(2). For example, § 101(8) provides that "[t]he term 'consumer debt' means debt incurred by an individual primarily for a personal, family, or household purpose." The phrase appears in § 365(d)(5) regarding performance of obligations under an unexpired lease; in § 506(a)(2), inserted by BAPCPA, regarding valuation of certain property; in § 507(a)(7) regarding priority claims for deposits for goods and services; and in various places in § 522 regarding exempt property. Consequently, the omission of "family or household" from the hanging paragraph means as a matter of statutory construction that the phrase "personal use" standing alone has a different meaning.

reasoning of *Jackson* and held that vehicles purchased for family members were not acquired

for the "personal use of the debtor" without specifically addressing the omission of the words

"family or household" as the basis for their conclusion.  *See, e.g.*, *In re Davis*, Case No. 06-

10461-DHW, 2006 WL 3613319, at *2 (Bankr. M.D. Ala. Dec. 8, 2006) (slip opinion).

The provisions of the "hanging paragraph" also provoke an additional concern in the

determination of what constitutes acquisition of a vehicle for personal use.  The "hanging

paragraph" requires such a determination if a motor vehicle is acquired for personal use, but as

a practical matter in the case of many motor vehicle purchases, the vehicle is put into service

for a number of intended uses.  With respect to a determination of personal use, the "hanging

paragraph" is silent as to either a proportion of use of a motor vehicle by a non-debtor or non-

personal use.  As Judge Steen aptly notes:

> [T]he hanging paragraph does not use the words "solely", "exclusively",
> "mostly", "primarily", "partially" or any other bright line (or even hazy, gray
> line).  There is no authority in the statute to determine that a vehicle is not a 910
> Vehicle because the purchaser intended someone else to use it part of the time.
> . . . .
> [J]ust as there is no bright or gray line for the Court to use when comparing
> proportionate use by a debtor and use by a nondebtor, there is no guidance in the
> statute concerning what percentage of business use (less than 100%) would
> disqualify the vehicle as a 910 Vehicle. The words "solely", "exclusively",
> "mostly", "primarily", "partially" or any other type of quantitative requirement
> do not appear in the hanging paragraph in this context, either.

*In re Solis*, 356 B.R. at 409.

---

*In re Press*, 2006 WL 2734335, at * 2 (citing *United States Nat'l Bank v. Indep. Ins. Agents of
Am.*, 508 U.S. 439 (1993)) (additional citations omitted).

Furthermore, the concepts of "personal," "family," and "household" use are themselves often overlapping as a practical matter for many consumer debtors. As Judge Steen again observed:

> "Personal" use and "family or household" use are not different or mutually exclusive. The chapter 13 debtor is always a person, and when the debtor has a family it would be virtually impossible to distinguish "family" use from "personal" use. And, even if "personal" "family" and "household" were mutually exclusive as to any one event or activity, the same vehicle could provide "family or household" benefits on some trips and could provide "personal" benefits on other trips. Therefore, the Court concludes that "personal use" includes any use of the vehicle that benefits the debtor(s) such as transportation that satisfies personal wants (such as recreation), transportation that satisfies personal needs (such as shopping or seeking medical attention or other errands), and transportation that satisfies family and other personal obligations, whether legal or moral obligations.

*Id.* at 410.[15]

In the context of interpretation of the requirements under Section 722 that property to be redeemed must be for a "personal, family or household use," the Fourth Circuit Court of Appeals has also recognized that, while this requirement describes three categories of goods, some uses may necessarily overlap:

> [The debtor] essentially argues, however, that because she owns the property in her own name, it is property for personal use. She asserts that any other reading of the language of § 722 would overemphasize the importance of the terms "family use" and "household use," effectively eliminating the term "personal use" from the statute. We disagree. The terms "personal," "family," and "household" describe three different

---

[15] One decision has considered the proposition that, because of the absence of a definition of "personal use" in the "hanging paragraph," reference should be made to Internal Revenue Service guidelines on business deductions or to state exemption statutes to determine what constitutes "personal use." *In re Hill*, 352 B.R. 69, 71-72 (Bankr. W.D. La. 2006). This Court agrees with the many reasons cited by Judge Schiff as to why such an approach is inappropriate. *Id.*

categories of goods, and although these categories undoubtedly overlap to some extent—for example, a television set may be used by the debtor personally and by family members—there are some items of personal property, such as clothing, that only the debtor typically would use.

*Cypher Chiropractic Ctr. v. Runski* (*In re Runski*), 102 F.3d 744, 747 (4th Cir. 1996).

Where the debtor's acquisition of a motor vehicle is for other than a single use, courts have considered how to determine the applicability of the "hanging paragraph" and remain consistent with the statutory mandate. One court has advanced the proposition that, as is done in a number of other bankruptcy contexts, a totality of the circumstances approach is appropriate. *In re Hill*, 352 B.R. 69, 71-74 (Bankr. W.D. La. 2006) (citing *In re Johnson*, 350 B.R. 712, 715-16 (Bankr. W.D. La. 2006)). Other courts, in the absence of statutory guidance where a debtor's usage of a motor vehicle is mixed, have adopted an approach that determines the "personal use" requirement is satisfied "if the personal use of the debtor is significant and material, regardless of whether there is also some business use." *In re Solis*, 356 B.R. at 409. *Accord*, *In re Wilson*, Case No. 06-40637, 2006 WL 3512921, at *3-4 (Bankr. D. Kan. Dec. 5, 2006) (slip opinion). Finally, it appears virtually all of the decisions reviewing the "hanging paragraph" of Section 1325 of the Bankruptcy Code conclude that whatever test or tests may be applied must determine usage as of the date of acquisition of the motor vehicle and not the usage as of the date of the debtor's bankruptcy petition. *See, e.g.*, *In re Hill*, 352 B.R. at 72.

It remains to apply this difficult statute and conflicting interpretive caselaw to the circumstances of Phillips. However, in contrast to some of the reviewing courts that have confronted this uneasy task, this Court does not begin its writing with a clean slate. The Fourth Circuit Court of Appeals has previously advanced its interpretation of the term "personal use,"

albeit in the different bankruptcy statutory context of Section 722 of the Bankruptcy Code in

*Runski*.  In so doing, the decision there viewed the phraseology of Section 722 of  "personal,

family, or household use" as representing three categories of goods subject to some degree of

possible overlap but critically concluding the term "personal use" was use of a non-business

nature without profit motive.  *In re Runski*, 102 F.3d at 747.  Other courts looking to divine the

meaning of the "hanging paragraph" have adopted this distinction of "business" or profit-

motivated use as opposed to "personal" use.  *In re Wilson*, 2006 WL 3512921, at *2-3; *In re*

*Lowder*, Case No. 05-44802, 2006 WL 1794737, at *3-4 (Bankr. D. Kan. June 28, 2006) (slip

opinion).  The rules of statutory construction requires the presumption that identical terms have

the same meaning throughout the same act. *In re Runski*, 102 F.3d at 746-47 (citing *United*

*States Nat'l Bank v. Indep. Ins. Agents of Am.*, 508 U.S. 439, 460 (1993)).  In interpreting the

requirement of "personal use" in Section 722 in *Runski*, the Court there made certain its view

that the three criteria of that statute were disjunctive, and this Court believes the Fourth Circuit

Court of Appeals would apply the identical interpretation of the term "personal use" in the

context of the "hanging paragraph" of Section 1325.  Accordingly, as concluded in the context

of Section 722, this Court is of the belief the requirement of "personal use" found in the

"hanging paragraph" of Section 1325 means use of a vehicle for a non-business or non-profit

making purpose.[16]  Again, this Court cannot conclude that either of the enumerated exceptions

---

[16]  In her supplemental brief filed subsequent to the hearing on the Objections of Triad
and the Trustee, Phillips asserts that the court in *In re Solis*, cited by the Trustee, misapplied the
holding of the Fourth Circuit Court of Appeals in *In re Runski*.  Phillips believes this decision is
controlling for the proposition that there are distinct differences in the statutory interpretation of
the terms "personal," "family," and "household, or lack thereof" and is not on point given the

to the Plain Meaning Rule apply with regard to this issue.  The result reached herein does not lead to a conflict with any neighboring or related statutes, but rather, sustains a consistent result throughout the Bankruptcy Code.  Further, the resulting interpretation of the "hanging paragraph" using the Plain Meaning Rule, while it may produce an unpopular result, such does not rise to the level required to trigger the absurdity exception.[17]  Applying this definition of what constitutes "personal use," the question then becomes, is the usage of the Automobile by Phillips "personal use"?

Evaluating all of the circumstances contained in the evidence in the instant matter, the Court concludes the Automobile of Phillips was acquired for "personal use."  The uses described by Phillips are all fundamentally non-business and not for a profit-making motive. Phillips attempts to distinguish the usage of her vehicle for transportation of her family as a "family" or "household" use and not as a personal use.  However, as noted in *Runski*, some types of property have overlapping uses, exemplified by "a television set [which] may be used by the debtor personally and by family members."  *In re Runski*, 102 F.3d at 747.  A motor

---

facts of the instant matter.  However, this Court believes the Fourth Circuit chose to reject a definition of "personal use" urged by the debtor Runski as usage being "personal" to her "because she owned the equipment in her own name and that she, herself, used it in the course of her business," (*In re Runski*, 102 F.3d at 746), and adopted a definition of "personal use" as encompassing non-business use.  *Id*. at 747.

[17] Phillips raises in her response that public policy favors her interpretation of the phrase "personal use."  As this Court has previously stated in interpreting another BAPCPA addition to the Bankruptcy Code, Section 109(h)(3)(A) (dealing with the pre-filing credit counseling requirement), even if applying the Plain Meaning Rule produces an unpopular result, "this Court is not the forum in which to seek a remedy; the proper venue instead lies with Congress."  *In re Watson*, 332, B.R. 740, 745 (Bankr. E.D. Va. 2005).

vehicle similarly is a category of property that may be acquired for multiple uses, and in this

instance, the use of the Automobile is for non-business purposes. The use of the Automobile

by Phillips for transportation of her family members is not so distinct from the use of the debtor

for "personal use," *i.e.*, non-business and non-profit making use.[18]  This Court also believes the

use of the Automobile by Phillips for commuting to and from work is not a business use.  There

is no evidence that Phillips' employer requires her to have a motor vehicle for her employment.

---

[18]  The difficulties in application of the definition of "personal use" urged by Phillips was recognized by Judge Steen:

> "Personal" use and "family or household" use are not different or mutually exclusive. The chapter 13 debtor is always a person, and when the debtor has a family it would be virtually impossible to distinguish "family" use from "personal" use.  And, even if "personal[,]" "family" and "household" were mutually exclusive as to any one event or activity, the same vehicle could provide "family or household" benefits on some trips and could provide "personal" benefits on other trips.  Therefore, the Court concludes that "personal use" includes any use of the vehicle that benefits the debtor(s) such as transportation that satisfies personal wants (such as recreation), transportation that satisfies personal needs (such as shopping or seeking medical attention or other errands), and transportation that satisfies family and other personal obligations, whether legal or moral obligations.

*In re Solis*, 356 B.R at 409-10.  Judge Steen goes on to provide:

> For example, how could one ever analyze whether a trip to the grocery store for a family of 4 was a "family" use or a "personal" use; would bankruptcy judges start inquiring into whether the percentage of food that was purchased for debtor(s) was greater than the percentage that was purchased for others?  And if the courts did make that inquiry, what would the percentage test be?  More important, can anyone really say that taking a child to school or to a soccer game is not a personal benefit to the parent?  Would bankruptcy judges be required to start taking testimony about how much personal pleasure debtors got from such activities?  Other usage of the vehicle (trips to the doctor?) may satisfy legal support and parental obligations.  Is satisfaction of a "person's" legal obligations a "personal" use?

*Id.* at 410 fn.23.

*See In re Hill*, 352 B.R. 69,73 (Bankr. W.D. La. 2006) (finding no evidence that the debtor was required to have a vehicle during the course of the day at her place of employment). This Court agrees with the rationale of Judge Steen set forth in *Solis* that use of a vehicle for commuting to work is largely a matter of personal choice and not a business usage except in the most rare circumstances. *In re Solis*, 356 B.R. at 410.[19]

The Court also agrees with Judge Steen's view that the lack of use by Congress of a modifier such as "sole" or "exclusive" preceding the term "personal use" is indicative of the lack of authority to interpret the "hanging paragraph" as requiring that the vehicle be used only the debtor and not by or for any other member's of the debtor's household. *See In re Solis*, 356 B.R. at 409. Thus, for the same reasons as expressed above, the Court declines to adopt Phillips' suggestion that the Court read a word such as "sole" or "exclusive" into the "hanging paragraph."

Finally, even if there is a basis to characterize a portion of Phillips' use of the Automobile as distinct "family or household use," application of the test suggested in *In re Solis* in the instance of a vehicle acquired for mixed use of whether the personal use is material or significant indicates here the personal use of the Automobile by Phillips easily satisfies this criteria. Accordingly, the Court concludes that, based on the totality of the evidence, the

---

[19] In each of the decisions this Court has located where one of the arguments advanced by a debtor is that a smaller vehicle would have been purchased but for the necessity of transportation of family members, the courts have rejected this contention as being an indicia of non-personal use. *In re Wilson*, Case No. 06-40637, 2006 WL 3512921, *2 (Bankr. D. Kan. Dec. 5, 2006) (slip opinion); *In re Bolze*, Case No. 06-40036, 2006 Bankr. LEXIS 2027, at *11 (Bankr. D. Kan. Aug. 31, 2006); *In re Lowder*, Case No. 05-44802, 2006 WL 1794737, at *1 (Bankr. D. Kan. June 28, 2006).

Automobile was acquired by Phillips for personal use, and the "hanging paragraph" of Section 1325 applies to prohibit the bifurcation of the Triad Claim.  On that basis, the Court finds that the Objections by Triad and the Trustee should be sustained and that confirmation of Phillips' Plan should be denied.

## V.  Interest Rate

Triad and the Trustee object to the interest rate provided by Phillips for the claim of Triad in the Plan.  Triad argues the rate of interest on its claim must be determined in accordance with the requirements expressed by the Supreme Court in *Till v. SCS Credit Corp.* (*In re Till*), 541 U.S. 465 (2004).  Phillips appears to agree with Triad that the *Till* requirements remain applicable after the enactment of BAPCPA.  The Trustee, in contrast, suggests that a claim determined to be subject to the provisions of the "hanging paragraph" of Section 1325 may not be entitled to the payment of interest.  The Trustee relies on *In re Wampler*, 345 B.R. 730 (Bankr. D. Kan. 2006), which holds that the secured creditor is not entitled to interest because, with Section 506 removed from the equation, claims under the "hanging paragraph" are secured by a non-bankruptcy lien, allowed under Section 502, and must be treated outside the confines of Section 1325(a)(5).  Trustee's Brief in Support, at 11-12 (citing *In re Wampler*, 345 B.R. at 740).  *See also In re Carver*, 338 B.R. 521, 525 (Bankr. S.D. Ga. 2006) (determining that claims involving vehicles subject to the "hanging paragraph" are no longer secured claims for the purposes of distribution of plan funds and therefore are not entitled to interest).

This Court in its recent decision of *In re Ellegood*, ___ B.R. ___, Case No. 06-50579-

39

SCS, 2007 WL 576048, at *3 (Bankr. E.D. Va. Feb. 22, 2007), concluded "that the negation of the operation of Section 506 of the Bankruptcy Code on claims described in the 'hanging paragraph' does not have the legal effect of rendering such claims unsecured." *Id.* at *3. Accordingly, this Court has rejected the underlying basis for some courts to conclude no interest need be paid on a claim subject the provisions of the "hanging paragraph."

The payment of interest on claims subject to the provisions of the "hanging paragraph" has been considered by a number of courts. The overwhelming majority have held interest on such a claim must be paid at the *Till* rate, which requires that interest must be paid on secured claims, with the starting point of this determination being the national prime rate of interest, and adjusted as appropriate so as to compensate the creditor for the "time value of their money [resulting from the stream of payments to come due the creditor under the Chapter 13 Plan] and the risk of default," (*In re Till*, 541 U.S. at 477-79). *See In re McCormick*, Case No. 06-53358-SVK, 2006 WL 3499226, at *3-4 (Bankr. E.D. Wis. Dec. 5, 2006); *In re Robinson*, 355 B.R. 920, 922 (Bankr. M.D. Ga. 2006); *In re Vagi*, 351 B.R. 881, 886-87 (Bankr. N.D. Ohio 2006); *In re Brill*, 350 B.R. 853, 855-56 (Bankr. E.D. Wis. 2006); *In re Posey*, Case No. 06-10011, 2006 WL 2711845, at *1 (Bankr. N.D. Ind. Sept. 21, 2006); *In re Murray*, 352 B.R. 340, 354 (Bankr. M.D. Ga. 2006); *In re Sparks*, 346 B.R. 767, 771-72 (Bankr. S.D. Ohio 2006); *In re Brown*, 346 B.R. 246, 248 (Bankr. M.D. Ga. 2006); *In re Ross*, 355 B.R. 53, 58-59 (Bankr. W.D. Tenn. 2006); *In re Soards*, 344 B.R. 829, 832 (Bankr. W.D. Ky. 2006); *In re Bufford*, 343 B.R. 827, 838 (Bankr. N.D. Tex. 2006); *In re Brooks*, 344 B.R. 417, 422 (Bankr. E.D.N.C. 2006); *In re Scruggs*, 342 B.R. 571, 575 (Bankr. E.D. Ark. 2006); *In re Shaw*, 341 B.R. 543,

40

547 (Bankr. M.D.N.C. 2006).

Judge Carruthers well explained the reasoning for this conclusion that the requirements

of *Till* are applicable to claims subject to the "hanging paragraph":

> [E]ven though the Hanging Paragraph makes § 506 inapplicable to certain
> secured claims, it does not mean that claims covered by the Hanging Paragraph
> are no longer secured. Therefore, as the Hanging Paragraph does not strip
> otherwise secured claims of their secured status, § 1325(a)(5) continues to apply
> to those claims.  Given that § 1325(a)(5) applies to the Creditor's claim, the court
> must now determine how the claim must be treated in order to meet the
> confirmation requirements.
>
> . . . [T]he relevant portion of § 1325(a)(5) is found in subsection (B). In §
> 1325(a)(5)(B)(ii), the statute dictates that the Creditor is to receive "the value, as
> of the effective date of the plan, of property to be distributed under the plan on
> account of such claim" and such value may not be "less than the allowed amount
> of such claim."  The language of § 1325(a)(5)(B)(ii) was not changed by the
> enactment of BAPCPA.  As stated by the Supreme Court in *Till*, this paragraph
> requires that the Creditor's claim be paid in full, either at the time of confirmation
> or over time with interest.  The *Till* Court performed a thorough analysis of the
> statutory language and provided detailed instructions by which subsequent courts
> should calculate the appropriate rate of interest. When Congress enacted
> BAPCPA, it is presumed to have known of the Supreme Court's decision in *Till.*
> Therefore, given Congress's knowledge of the *Till* decision and Congress's
> decision not to change to the applicable statutory language when enacting
> BAPCPA, this court concludes that the Till rate remains the proper interest rate
> with which secured claims must be paid to meet the requirements of §
> 1325(a)(5)(B)(ii).

*In re Shaw*, 341 B.R. at 546-47 (citations omitted).

This Court agrees with reasoning in *Shaw* and holds that claims subject to the provisions

of the "hanging paragraph" are required to be paid with interest at a rate consistent with the

holding of *Till*.  Accordingly, the objection of the Trustee is overruled to the extent he suggests

that claims subject to the "hanging paragraph" are not entitled to interest.  The objection of

41

Triad as to the rate of interest provided on its claim speaks to its contention that the interest rate set forth by Phillips in the Plan does not comply with the requirements of *Till.* As this Court has sustained the objection of Triad as to its contention the "hanging paragraph" applies to its claim, Phillips will either file an amended Plan or suffer dismissal of its case in accordance with the Local Bankruptcy Rule 3015-2(H) of the local rules of this Court.[20] Accordingly, the Court will reserve for adjudication the determination of the appropriate rate of interest on the Triad Claim under *Till* unless and until it is the subject of a future objection by Triad or the Trustee to an amended Chapter 13 plan filed by Phillips.

## CONCLUSION

The provisions of the "hanging paragraph" of Section 1325 of the Bankruptcy Code are applicable so as to prohibit Phillips from bifurcating the Triad Claim as provided in the Plan. Accordingly, the Objections of Triad and the Trustee to the Plan should be sustained, and confirmation of Phillips' Plan should be denied.

---

[20] Local Rule 3015-2(H)(3) of the Local Rules of the United States Bankruptcy Court for the Eastern District of Virginia provides, in pertinent part, as follows:

> Except as provided in LBR 1017-3 [addressing the suspension of provisions for automatic dismissal if certain conditions are met], if the Court denies confirmation of the debtor's original or subsequently modified Chapter 13 Plan and Related Motions . . . . the clerk is directed to issue an order dismissing the chapter 13 case unless, within twenty (20) days after denial of confirmation:
>> (a) the debtor files a new Modified Chapter 13 Plan and Related Motions;
>> (b) the debtor converts or moves to convert the case to another chapter of the Bankruptcy Code;
>> (c) the debtor files a motion for reconsideration or appeals the denial of confirmation; or
>> (d) the Court otherwise orders.

The Clerk is ORDERED to forward a copy of this Memorandum Opinion to Michael J.

Heath, Counsel for the Debtor, Mark T. Domeyer, Counsel for Triad; and to George W. Neal,

Chapter 13 Trustee.

**Entered this 8th day of March, 2007, at Norfolk, in the Eastern District of Virginia.**

STEPHEN C.  ST. JOHN
United States Bankruptcy Judge

43